**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

KIRK NELSON and JOHN EVANS, individually and
on behalf of all other persons similarly situated,

Plaintiffs,

- v -                                          1:15-cv-00314 (BKS/TWD)

SABRE COMPANIES, LLC and
SABRE ENERGY SERVICES, LLC.

Defendants.

**APPEARANCES:**                    **OF COUNSEL:**

LAW OFFICES OF
ELMER ROBERT KEACH, III, P.C.      ELMER R. KEACH, III, ESQ.
                                    MARIA K. DYSON, ESQ.

MIGLIACCIO LAW FIRM PLLC            NICHOLAS A. MIGLIACCIO, ESQ.
WHITFIELD BRYSON & MASON LLP        JASON S. RATHOD, ESQ.
ROBERT PEIRCE & ASSOCIATES, P.C.    D. AARON RIHN, ESQ.
*Attorneys for Plaintiffs*

NORTON ROSE FULBRIGHT US LLP        SHAUNA JOHNSON CLARK, ESQ.
                                    KIMBERLY CHEESEMAN, ESQ.
PILLSBURY WINTHROP SHAW PITTMAN     JOHN SCALIA, ESQ.
*Attorneys for Defendants*

**THÉRÈSE WILEY DANCKS**
**United States Magistrate Judge**

**DECISION and ORDER**[1]

On March 18, 2015, Plaintiffs filed this action alleging that Sabre Companies, LLC, and

Sabre Energy Services,  LLC (collectively "Sabre"), violated the Federal Labor Standards Act

("FLSA"), 29 U.S.C. § 216(b).  (Dkt. No. 1.)  By stipulation of the parties, Plaintiffs amended

the complaint to also allege violations of Arkansas wage and hour laws for Plaintiff John Evans

---

[1] Because this motion involves a non-dispositive pre-trial matter, the undersigned has jurisdiction to decide it
under 28 U.S.C. § 636(b)(1)(A).  *See Ruggles v. WellPoint, Inc.*, 591 F. Supp. 2d 150, 156 n.6 (N.D.N.Y. 2008).

("Evans") and the putative class he represents.  (Dkt. No. 46.)  These claims are based upon Defendants' alleged failure to pay required overtime compensation.  *See generally id.*  Plaintiffs seek to make this action a collective action pursuant to the FSLA and Plaintiff Evans seeks to make his Arkansas claims a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.  *Id.* at ¶ 2.

Plaintiffs filed a Motion to Conditionally Certify an FLSA Collective Action, pursuant to 29 U.S.C. § 216(b), and to authorize the distribution of a nationwide notice to all of those employees and former employees of Sabre who may be similarly situated to the named Plaintiffs in this pending litigation and to provide potential plaintiffs an opportunity to opt-in to this action.  (Dkt. No. 53.)  Defendants filed a Response in opposition to the Motion (Dkt. No. 61), and Plaintiffs have filed a Reply.  (Dkt. No. 64.)  Thereafter, the parties each filed further letter briefs in support of their respective positions on the pending Motion.  (Dkt. Nos. 71 and 72.)   Although the supplemental letter briefs were filed without permission, the Court will consider them in the context of reviewing all arguments and documents submitted on this Motion.  (Dkt. No. 73.)  For the reasons that follow, Plaintiffs' Motion to Conditionally Certify a FLSA Collective Action is granted.

I.      **BACKGROUND**

A.      **The Parties**

Sabre, a company that uses chlorine dioxide to disinfect biological and chemical pollutants, discovered and patented "ways in which to produce pure chlorine dioxide with

equipment on a mobile platform." (Dkt. No. 61 at 8.[2]) Sabre employees "travel to remote locations and produce chlorine dioxide on site." *Id.* "Defendant Sabre Companies LLC has various affiliate and subsidiary entities that perform these services, with Defendant Sabre Energy Services LLC dedicated to the oil and gas portion of the business." *Id.* at 9. Sabre Companies LLC "acts as a paymaster for the various entities by processing payroll on behalf of the entities, including Sabre Energy Services." *Id.* & n.5. Sabre is headquartered in Slingerlands, New York, and during the relevant time period in this action, Sabre operated primarily out of field offices in Arkansas, Texas, and Oklahoma. (Dkt. No. 55 at 9-10.)

Presently, there are two named Plaintiffs who were employed by Sabre.[3] Plaintiff Kirk Nelson resides in Vail, Arizona, and was employed by Sabre in Odessa, Texas, as an Operator from approximately April 2014 to February 2015. (Dkt. No. 46 at ¶¶ 8-9.) Plaintiff John Evans resides and was employed by Sabre as an Operator in Beebe, Arkansas, from approximately June 2013 to June 2014. *Id.* at ¶¶ 11-12. Eleven other individuals have filed consents to become party plaintiffs since the filing of this motion, including Matt Lichty whose declaration has been submitted in support of this motion. (Dkt. Nos. 65-70, 74; *see also* Dkt. No. 54-9.)

## B.   The Complaint and Procedural History

Plaintiffs allege that they and the Collective Action Members worked for Sabre as Operators, Fluid Technicians, and Supervisors (collectively "Operators") and that Sabre maintained "control, oversight, and discretion over the operations of worksites, including

---

[2] Page numbers citing to the parties' briefs and other documents filed on the docket refer to the numbers inserted by the Court's CM/ECF filing system.

[3] Fred Bean, whose declaration has been submitted in support of Plaintiffs' Motion, also consents to become a party to this action. (Dkt. No. 54-8 at 5.)

employment practices with respect to Plaintiffs, and the Collective Action Members." (Dkt. No. 46 at ¶¶ 1, 25.) They complain that Sabre employed "many Operators and other employees holding comparable positions but different titles throughout the United States who are compensated pursuant to Sabre's common policy regarding overtime compensation." *Id.* at ¶ 41. Plaintiffs allege that they and the Collective Action Members consistently worked over forty (40) hours each workweek without being paid overtime wages in violation of the FLSA and, for Plaintiff Evans and others like him within the State of Arkansas, also in violation of Arkansas wage and hour laws. *Id.* at ¶¶ 27, 28, 44. These named Plaintiffs bring this action on behalf of all Sabre employees who worked as Operators and comparable positions with other job titles, who were performing substantially similar job duties, for Sabre's failure to pay them proper overtime compensation for all hours worked beyond the forty (40) hour work week in violation of the FLSA, and in violation of Arkansas wage and hour laws for any employees such as Evans who worked in Arkansas.[4] *Id.* at ¶¶ 1, 2.

### C.      Motion For Conditional Class Certification and Court-Authorized Notice Pursuant to FLSA, 29 U.S.C. § 216(b)

Plaintiffs, on behalf of themselves individually and all other similarly situated employees, bring this Motion pursuant to FLSA, 29 U.S.C. § 216(b). (Dkt. Nos. 55 & 71.) As a necessary component of this Motion, Plaintiffs also seek discovery of the names and contact information of former and current employees who may be similarly situated. (Dkt. No. 55 at 24.)

------

[4] Based upon the same factual allegations, as noted Arkansas Plaintiff Evans also brings a claim arising under the Arkansas wage and hour laws. Evans seeks to make these claims a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure. (Dkt. No. 46 at ¶¶ 43-54, 62-66.) Despite Defendants' conclusory assertions to the contrary (*see* Dkt. No. 61 at 23) Rule 23 and the Arkansas claims are not relevant for purposes of this motion, and the discussion is confined to the parameters of the FLSA.

Plaintiffs argue in support of their motion that they and the potential opt-in plaintiffs (1) share the same or similar job duties and responsibilities pursuant to Sabre's policies, practices, and real-time surveillance; (2) routinely work more than forty (40) hours per workweek; and (3) are all mis-classified as exempt employees and not paid overtime for those hours worked in excess of forty (40) hours. (*See generally* Dkt. No. 55.) Because those who may be similarly situated to the Plaintiffs would not know about this case or even their rights to pursue FLSA claims, Plaintiffs seek to have notice distributed nationally to the putative class members.

Sabre opposes this Motion on several grounds: (1) Plaintiffs cannot represent the putative class members because they share little in common with all levels of Operators; (2) the putative class members have different titles and responsibilities and perform different duties based, in part, on geography, the customer, and the complexity of the project; (3) the Motor Carrier Act, 49 U.S.C. § 31502, exempts some Operators in the putative class under FLSA such that defenses are dissimilar for potential class members; (4) Plaintiffs have failed to show other opt-ins may join the lawsuit; and (5) Plaintiffs ignore the Arkansas wage and hour claims. (*See generally* Dkt. No. 61.)

## II.     LEGAL STANDARDS

### A.      FLSA § 216(b)

Section 216(b) of the FLSA provides, in pertinent part:

> [a]ny employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages. Any employer who violates the provisions of section 215(a)(3) of this title shall be liable for such legal or equitable relief as may be appropriate to

effectuate the purposes of section 215(a)(3) of this title, including without limitation employment, reinstatement, promotion, and the payment of wages lost and an additional equal amount as liquidated damages.  An action to recover the liability prescribed in either of the preceding sentences may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated.  No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.[5]

29 U.S.C. § 216(b).  Thus, section 216(b) provides a private right of action to an employee to recover unpaid minimum wages and/or overtime compensation from an employer who violates the Act's provisions, and permits such an action to be brought as a collective action.  *Id.*  Once a collective action is certified, however, section 216(b) "requires that employees affirmatively opt-in to an FLSA collective action by filing a written consent."  *Young v. Cnty. of Nassau*, No. 09-3830, 2010 WL 161593, at *1 (E.D.N.Y. Jan. 13, 2010).

District Courts within the Second Circuit have long recognized that courts have broad discretion in authorizing notice and discovery under the FLSA.  Such recognition "comports with the broad remedial purpose of [FLSA] . . . as well as with the interest of the courts in avoiding multiplicity of suits."  *Braunstein v. Eastern Photographic Labs. Inc.*, 600 F.2d 335, 336 (2d Cir. 1979).

For a collective action under the FLSA, Plaintiffs must "establish: (1) that the named plaintiffs and proposed members of the class must be 'similarly situated,' and (2) that the proposed class members consent in writing to be bound by the result of the suit."  *Abrams v. Gen.*

---

[5] As noted, since the filing of this Motion to Certify a Conditional Class, eleven former and/or current Sabre employees opted into this action.  (Dkt. Nos. 65-70, 74.)

*Elec. Co.*, No. 95-CV-1734 (FJS), 1996 WL 663889, at *1 (N.D.N.Y. Nov. 4, 1996).  The

Second Circuit has cited with approval a two-step approach that district courts in this Circuit use

to determine whether, in their discretion, an action may be certified under the FLSA.  *Myers v.*

*Hertz Corp.*, 624 F.3d 537, 554 (2d Cir. 2010).  In *Myers*, the Court stated:

> The first step involves the court making an initial determination to
> send notice to potential opt-in plaintiffs who may be "similarly
> situated" to the named plaintiffs with respect to whether a FLSA
> violation has occurred.  The court may send this notice after
> plaintiffs make a "modest factual showing" that they and potential
> opt-in plaintiffs "together were victims of a common policy or plan
> that violated the law."  In a FLSA exemption case, plaintiffs
> accomplish this by making some showing that "there are other
> employees . . . who are similarly situated with respect to their job
> requirements and with regard to their pay provisions," on which the
> criteria for many FLSA exemptions are based, who are classified as
> exempt pursuant to a common policy or scheme.  The "modest
> factual showing" cannot be satisfied simply by "unsupported
> assertions," but it should remain a low standard of proof because
> the purpose of this first stage is merely to determine *whether*
> "similarly situated" plaintiffs do in fact exist.  At the second stage,
> the district court will, on a fuller record, determine whether a so-
> called "collective action" may go forward by determining whether
> the plaintiffs who have opted in are in fact "similarly situated" to
> the named plaintiffs.  The action may be "de-certified" if the record
> reveals that they are not, and the opt-in plaintiffs' claims may be
> dismissed without prejudice.

*Id.* at 555 (internal citations omitted); s*ee also Glatt v. Fox Searchlight Pictures, Inc.*, 811 F.3d

528, 540 (2d Cir. 2016).

Neither the FLSA nor its implementing regulations define "similarly situated."  *Hoffman*

*v. Sbarro, Inc.*, 982 F. Supp. 249, 261 (S.D.N.Y. 1997).  However, a plaintiff's burden at this

preliminary stage is minimal.  *Lynch v. United Services Auto Ass'n*, 491 F. Supp. 2d 357, 368

(S.D.N.Y. 2007).  "[A] named plaintiff in a collective action need not demonstrate other facts -

numerosity, commonality, typicality, and adequacy of representation - which are required to

bring a class action" under Rule 23 of the Federal Rules of Civil Procedure. *Sexton v. Franklin

First Financial, Ltd.*, No. 08-CV -04950 (JFB)(ARL), 2009 WL 1706535, at *4 (E.D.N.Y. June

16, 2009).  When making this initial finding, the court does not weigh the merits, resolve factual

disputes, or make credibility determinations. *Lynch*, 491 F. Supp. 2d at 368.  Upon determining

that the potential opt-in plaintiffs are similarly situated, the court conditionally certifies the

collective action, and the named plaintiffs may then send a court-approved notice to potential

members, advising of their right as potential plaintiffs to join in the action by filing consent

forms with the court.  *Id.* at 367-68.

The second step of the inquiry generally occurs after the completion of discovery.  "At

that point, the court makes a factual finding based on the developed record as to whether or not

the class members are actually similarly situated," *Bifulco v. Mortgage Zone, Inc.*, 262 F.R.D.

209, 212 (E.D.N.Y. 2009), and whether the case should continue as a collective action. *Iglesias-

Mendoza v. LaBelle Farm, Inc.*, 239 F.R.D. 363, 367 (S.D.N.Y. 2007).  At the second stage,

courts consider: "(1) disparate factual and employment settings of the individual plaintiffs; (2)

the various defenses available to defendant which appear to be individual to each plaintiff; [and]

(3) fairness and procedural considerations." *Jason v. Falcon Data Com, Inc.*, No. 09-CV-03990

(JG)(ALC), 2011 WL 2837488, at *4 (E.D.N.Y. July 18, 2011) (internal quotations and citation

omitted).  Generally, this second step is initiated by the defendant's filing of a motion for

decertification. *Iglesias-Mendoza,* 239 F.R.D. at 367.

**B.    Exemptions Under the FLSA**

By its enactment of the FLSA in 1938, Congress sought to eliminate "labor conditions

detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers[.]"  29 U.S.C. § 202(a); *see Williams v. Tri-State Biodiesel, L.L.C.*, No. 13 Civ. 5041(GWG), 2015 WL 305362, at *4 (S.D.N.Y. Jan. 23, 2015); *Masson v. Ecolab, Inc.*, No. 04 Civ. 4488(MBM), 2005 WL 2000133, at *4 (S.D.N.Y. Aug. 17, 2005).  One of its provisions requires employers to pay an employee one and-one-half times his regular pay rate for work in excess of forty hours per week.   29 U.S.C. § 207(a)(1); *Williams*, 2015 WL 305362, at *4.  This mandate, however, is subject to certain exemptions, which, in light of the strong considerations upon which the FLSA is predicated, "are to be narrowly construed against the employers seeking to assert them and their application limited to those establishments plainly and unmistakably within their terms and spirit."  *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960); *accord Chen v. Major League Baseball Props., Inc.*, 798 F.3d 72, 81 (2d Cir. 2015).  An employer bears the burden of proving that an FLSA exemption applies. *Arnold*, 361 U.S. at 394 n.11; *accord Bilyou v. Dutchess Beer Distribs., Inc.*, 300 F.3d 217, 222 (2d Cir. 2002).

        1.    <u>The Motor Carrier Exemption</u>

One of the applicable exemptions is commonly referred to as the "motor carrier exemption."  29 U.S.C. § 213(b)(1); *Fox v. Commonwealth Worldwide Chauffeured Transp. of N.Y. LLC*, 865 F. Supp. 2d 257, 263-64 (E.D.N.Y. 2012).  The relevant FLSA provision governing this exemption provides, in pertinent part, that

> (b)    The provisions of section 207 of this title shall not apply with respect to
>
> (1) any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum

9

> hours of service pursuant to the provisions of section 31502 of
> Title 49.

29 U.S.C. § 213(b)(1); *Fox*, 865 F. Supp. 2d at 264.  The exemption applies to those employees who

> (1) [a]re employed by carriers whose transportation of passengers
> or property by motor vehicle is subject to [the Secretary of
> Transportation's] jurisdiction under section 204 of the Motor
> Carrier Act, and

> (2) engage in activities of a character directly affecting the safety of
> operation of motor vehicles in the transportation on the public
> highways of passengers or property in interstate or foreign
> commerce within the meaning of the Motor Carrier Act.

29 C.F.R. § 782.2(a); *Williams*, 2015 WL 305362, at *5.

In 2008, Congress enacted the Safe, Accountable, Flexible, Efficient Transportation Equity Act, Technical Corrections Act, Pub. L. No. 110-244, 122 Stat. 1572, 1620 ("TCA") which, under section 306 of the TCA, addressed the scope of the Motor Carrier Act exemption to the FLSA's overtime premium mandate.  *Hernandez v. Alpine Logistics, LLC,* No. 08-CV-6254T, 2011 WL 3800031, at *4 (W.D.N.Y. Aug. 29, 2011).  This section of the TCA "expressly amended the FLSA by providing that overtime compensation would be available to 'covered employee[s]' despite the provisions of the Motor Carrier Exemption."  *Id.* (quoting P.L. § 306(A)).  With some limited exceptions, the TCA defined "covered employee" as an individual "(1) who is employed by a motor carrier or private motor carrier . . . ; (2) whose work, in whole or in part, is defined     (A) as that of a driver, driver's helper, loader, or mechanic; and (B) as affecting the safety of operation of motor vehicles weighing 10,000 pounds or less in transportation on public highways in interstate or foreign commerce . . . ; and (3) who performs

10

duties on motor vehicles weighing 10,000 pounds or less." P.L. 110-244 § 306(c). Thus,

notwithstanding the motor carrier exemption "drivers who met the definition of a covered

employee would be entitled to overtime compensation regardless of whether or not the [Secretary

of] Transportation had jurisdiction to regulate the hours and conditions of those drivers."

*Hernandez,* 2011 WL 3800031, at *4 .

Thus, "[t]he majority of courts have held that, under the [TCA], a driver is covered by the

FLSA's overtime-wage provisions when he spends part of the week driving a small vehicle and

part of a week driving a large vehicle." *Heng Guo Jin v. Han Sung Sikpoom Trading Corp.*, No.

13-CV-6789 (CBA)(LB), 2015 WL 5567073, at *7 (E.D.N.Y. Sept. 18, 2015) (citations omitted).

"[U]nder the [TCA], drivers who transport goods in both small and large vehicles are subject to

FLSA's overtime provisions. *Id.* at *6.

## 2.   The Executive Exemption

Another commonly cited exemption is the executive exemption. To qualify for the

executive exemption, the employee's primary duty must be the performance of managerial work.

*See* 29 C.F.R. § 541.102. A prerequisite for the exemption is that employees must "customarily

and regularly direct the work of at least two or more other [full time] employees." *Id*. §

541.100(a)(3). "The phrase 'customarily and regularly' means a frequency that must be greater

than occasional but which, of course, may be less than constant. Tasks or work performed

'customarily and regularly' includes work normally and recurrently performed every workweek;

it does not include isolated or one-time tasks." *Id*. § 541.701.

11

### III.     DISCUSSION

#### A.     Plaintiffs and Putative Collective Action Members are Similarly Situated

Here, the Court finds Plaintiffs have demonstrated a modest factual nexus between the named Plaintiffs and the putative collective action members, which is sufficient to support a preliminary determination that they were subjected to a common policy, plan, or practice that violated the law.  The bulk of Sabre's arguments essentially challenge Plaintiffs' FLSA claims on the merits, which, as noted above, is not proper at this stage of the litigation.  The relevant issue "is not whether Plaintiffs and potential opt-in plaintiffs were identical in all respects, but instead whether they were subjected to a common policy to deprive them of overtime pay when they worked more than 40 hours per week." *Solomon v. Adderley Indus., Inc.*, 847 F. Supp. 2d 561, 565 (S.D.N.Y. 2012) (internal brackets and citations omitted).  Moreover, potential plaintiffs may be deemed similarly situated for the purpose of preliminary certification under the FLSA despite not occupying the same positions or performing the same functions as long as they are subject to a common unlawful policy or practice. *Ruggles*, 591 F. Supp. 2d at 160; *Rudd v. T.L. Cannon Corp.*, No. 3:10-CV-0591 (TJM/DEP), 2011 WL 831446, at *9 (N.D.N.Y. Jan. 4, 2011). Courts also frequently grant motions for conditional certification that rely exclusively on the pleadings and sworn affidavits of the plaintiffs. *See Hernandez v. Bare Burger Dio Inc.*, No. 12 Civ. 7794(RWS), 2013 WL 3199292, at *3 (S.D.N.Y. June 25, 2013) ("[C]ourts in this circuit have routinely granted conditional collective certification based solely on the personal observations of one plaintiff's affidavit."); *Moore v. Eagle Sanitation, Inc.*, 276 F.R.D. 54, 59 (E.D.N.Y. 2011) (collecting cases).

In support of the Motion, Plaintiffs rely on more than just a single affidavit and the

pleadings.  Plaintiffs submit their deposition testimony, the declarations of two other Operators, deposition testimony from Sabre's witnesses, Sabre's comprehensive Standard Operating Procedures, documents about the real-time management surveillance of Operators, and other corporate documents.  (Dkt. Nos. 54-1 through 54-10.)  Plaintiffs' evidence shows that the Operators were all subject to the same compensation policies and worksite practices and terms, and types of duties regardless of their location.

First, testimony from Plaintiffs shows that Sabre had Operators of different levels and at different Sabre locations in the United States.  (Dkt. Nos. 54-2 at 2-6; 54-4 at 4-5, 9-10; 54-5 at 8-9.)  They were salaried and classified as exempt from overtime laws.  (Dkt. Nos. 54-3 at 4; 54-6 at 2-3; 54-7 at 2.)  Sabre acknowledges this pay method is common to all Operators.  *Id.*  This information provides evidentiary support as to the "similarly situated" requirement because it shows the alleged FLSA violations are the result of widespread corporate policies or practices that affect all potential class members.

Plaintiffs' submissions also show that the Operators are oil and gas field laborers, not executives.  The Operators perform on-site water treatment with Sabre's patented "DiKlor" Chlorine Dioxide water treatment technology.  (Dkt. Nos. 54-1 at 4-8; 54-4 at 4-5.)  The job is similar across all locations in different states and all projects regardless of differences in locations or specific types of water treatment projects performed.  (Dkt. Nos. 54-4 at 4-5, 9-10; 54-5 at 7-9; 54-8 at 4; 54-9 at 4.)  Nelson and Evans testified that as Operators they almost always worked by themselves or with just one other person.  (Dkt. Nos. 54-4 at 3-4; 54-5 at 3-4; 54-8 at 4; 54-9 at 4.)  Sabre's witness, John Mason, testified that at times more than 50% of Operators could be on "single man crews."  (Dkt. No. 54-2 at 30.)

13

Sabre contends that the named Plaintiffs cannot adequately represent the proposed class because they have only held one level of Operator, and because they have different job duties and responsibilities that varied by project complexity, customer, and geographic locations.  (Dkt. No. 61 at 16-17.)  These arguments are not persuasive.  *See Rudd*, 2011 WL 831446, at *9 (finding the plaintiffs "made the requisite modest showing that they and other former employees . . . are similarly situated, notwithstanding the fact that they may have occupied different job descriptions").  Further, Plaintiffs have demonstrated that there are issues of fact regarding those contentions.  These issues of fact should be determined following discovery, at the second stage of FLSA collective action certification, rather than this preliminary stage.  *See Salomon v. Adderley Indus., Inc.*, 847 F. Supp. 2d 561, 564 (S.D.N.Y. 2012) (fact-intensive inquiry is not appropriate at preliminary certification stage); *Parks v. Dick's Sporting Goods, Inc.*, No. 05-CV-6590 CJS, 2007 WL 913927, at *3-4 (W.D.N.Y. Mar. 23, 2007) (declining to apply a fact-specific inquiry at the first stage, and ruling that it would employ a "relatively lenient evidentiary standard in determining whether a collective action is appropriate").  Additionally, the district courts in this Circuit have traditionally held that the standard of proof is minimal rather than grueling at the preliminary certification stage.  *Ruggles*, 591 F. Supp. 2d at 158 (collecting cases).

In its opposition, Sabre also contends that the two declarations submitted by Matt Lichty and opt-in Plaintiff Fred Bean in support of Plaintiffs' Motion, are identical, inadequate, and conclusory and therefore do not support that conditional certification is warranted for a nationwide class.  (Dkt. No. 61 at 21; *see also* Dkt. Nos. 54-8 and 54-9.)  The Court does not agree.  While the declarations are repetitive of each other, the information contained in them is not conclusory.  In fact, the information shows that the work each individual did, in different

14

parts of the country at different levels of operators, was similar.  (Dkt. Nos. 54-8 and 54-9.)  The declarations show that these Operators used the same water treatment technology, the same operation manuals and procedures, and the same computer applications and monitoring policy on all projects in all locations.  (Dkt. Nos. 54-8 at 4; 54-9 at 4; 54-10.)  Therefore, for purposes of the FLSA conditional certification sought by Plaintiffs, the Court finds at this stage of the inquiry that the Operators had substantially similar job duties, compensation, and terms and conditions of work regardless of their location or rank.

### B.   Sabre's Defenses

Defendants also argue that the defenses in this lawsuit are dissimilar and therefore conditional certification is not appropriate.  (Dkt. No. 61 at 20.)  Specifically, Sabre notes that the Motor Carrier Act may exempt some Operators from overtime requirements, which is different than the executive exemption that may apply to other Operators.  *Id.*

However, the evidence submitted by Plaintiffs at this stage shows that Operators may not be exempt under the executive exemption because they perform manual labor, rather than supervisor or executive work, and primarily do it alone.  (Dkt. Nos. 54-4 at 3-4; 54-5 at 3-4; 54-8 at 4; 54-9 at 4.)  Sabre's corporate representative testified that upward of 50% of Operators are on "single man crews."  (Dkt. No. 54-2 at 30.)  To qualify for the executive exemption, the employee's primary duty must be the performance of managerial work.  *See* 29 C.F.R. § 541.102. A prerequisite for the exemption is that employees must "customarily and regularly direct the work of at least two or more other [full time] employees."  *Id.* § 541.100(a)(3).  As set forth above, "[t]he phrase 'customarily and regularly' means a frequency that must be greater than occasional but which, of course, may be less than constant.  Tasks or work performed

'customarily and regularly' includes work normally and recurrently performed every workweek; it does not include isolated or one-time tasks." *Id*. § 541.701.

Likewise, the evidence at this early stage of the proceedings shows that the motor carrier exemption may not apply because the Operators regularly drove and worked on vehicles under 10,000 pounds. Plaintiffs Evans and Nelson testified that they drove pickup trucks on a more regular basis for a variety of reasons, including to drive back and forth from the worksite and to pick up supplies to take to or from a worksite. (Dkt. Nos. 54-4 at 6-9; 54-5 at 5-8.) Lichty and Bean, two of the opt-in Plaintiffs made similar declarations, and added that they regularly drove pickup trucks such as Ford F250s, and regularly loaded and unloaded these trucks, and acted as a driver's helper when riding in the trucks including filling gas, changing tires, and performing other minor repairs. (Dkt. Nos. 54-8 at 3-4; 54-9 at 3-4.)

For purposes of this Motion, however, the Court makes no evaluation of the merits of Plaintiffs' claims and the defenses asserted. Various defenses available to Sabre that may be individual to each Plaintiff are examined at the second stage. *See Jason*, 2011 WL 2837488, at *4 (citation omitted). As noted earlier, at this initial stage where all that is being determined is whether potential opt-in plaintiffs may be similarly situated, the court does not weigh the ultimate merits of the claims, resolve factual disputes, make credibility determinations, nor decide substantive issues. *Lynch*, 491 F. Supp. 2d at 368.

Moreover, it is unnecessary at this stage to show that putative class members must share identical positions. *Schwedt v. Gen. Elec. Co.*, 159 F.R.D. 373, 374 (N.D.N.Y. 1995). The fact that there may be variations within job duties does not mean that conditional certification should be denied at this preliminary stage of the litigation. *Parks*, 2007 WL 913927, at *4. Plaintiffs

16

are not required to submit evidence implicating every Operator and at every job location to show how they have identical characteristics; instead, only a representative sample will suffice. *Id.* at *5. All of Sabre's "[c]hallenge3s to the merit of the claims and whether the putative class members are similarly situated are premature and best reserved for the second stage of the class analysis." *Ruggles,* 591 F. Supp. 2d at 161-62 (citing *Hoffmann-La Roche v. Sperling*, 493 U.S. 165, 174 (1989) ("In exercising the discretionary authority to oversee the notice-giving process, courts must be scrupulous to respect judicial neutrality. To that end, trial courts must take care to avoid even the appearance of judicial endorsement of the merits of the action.")).

Accordingly, the Court finds granting Plaintiffs' request for certification of a collective action that extends to all levels of Operators in all states where Sabre employs them is appropriate and would serve the interests of justice and efficiency. The Court acknowledges that Plaintiffs have not submitted evidence from employees whose work has encompassed every Operator in every state where Sabre conducts business. However, given the FLSA's broad remedial purpose, and the low standard of proof needed to conditionally certify the action at this stage of the process, the Court finds that unnecessary. Plaintiffs have submitted evidence which points to common practices in various Sabre worksites whereby Operators who have similar duties and terms of work at all levels are not paid overtime wages as a result of the alleged FLSA violations.

## C.    Discovery of Putative Class and Notice

Plaintiffs request that the Court approve their proposed notice and notice process regarding the putative class, and ask the Court to order discovery of the contact information of all Sabre Operators whom it classified as exempt at any time between November 10, 2012, and the

date of this Decision and Order.  (Dkt. No. 55 at 24.)  Plaintiffs also request that the Court toll

the statute of limitations for all putative class members from November 10, 2015, the date on

which the present motion was filed.  *Id.*  Sabre, without noting any basis, states that it "objects to

the content, form, and method of distribution of Plaintiffs' Proposed Notice (especially the use of

email notices)[.]"  (Dkt. No. 61 at 24.)  Sabre further asserts that this issue is premature for

briefing and requests that the parties confer in an attempt to agree on these issues should the

Court find that conditional certification is warranted.  *Id.*

1.   Discovery of Putative Class

Plaintiffs request that Sabre be ordered "to produce a computer-readable list of names,

last known mailing addresses, last known telephone numbers, last known email addresses, dates

of work, and work locations for all Collective Members, and the Social Security numbers of

those Collective Members whose notices are returned undeliverable."  (Dkt. No. 55 at 24-25.)

Sabre apparently objects to the proposed use of email notices, *see* Dkt. No. 61 at 24, but it is

unclear if Sabre objects to the discovery of email addresses.  Since Plaintiffs must have certain

information in order to effectuate the giving of notices of the pendency of this suit as a collective

action and to invite potential group members to opt-in, Sabre must produce information that is

necessary for proper notice.  *See Hoffman-La Roche*, 493 U.S. at 170 (holding that the benefits of

collective actions "depend on employees receiving accurate and timely notice concerning the

pendency of the collective action, so that they can make informed decisions about whether to

participate" and noting that the district court was correct in permitting discovery).  Courts

customarily grant such requests and the use of email notice in addition to notice by first class

mail in this computer age is reasonable.  *See Schear v. Food Scope Am., Inc.*, 297 F.R.D. 114,

18

130 (S.D.N.Y. 2014) (ordering production of computer-readable list of all names, addresses, telephone numbers, email addresses, and social security numbers for distribution of notice); *Hamadou v. Hess Corp.*, 915 F. Supp. 2d 651, 669 (S.D.N.Y. 2013) (requiring defendants to supply a "computer-readable list containing all potential collective action members' names, last known mailing addresses, last known telephone numbers, work locations, email addresses, dates of employment, dates of birth, and last four digits of the individuals' Social Security numbers."); *Ack v. Manhattan Beer Distribs.*, No. 11-CV-5582 (CBA), 2012 WL 1710985, at *6 (E.D.N.Y. May 15, 2012) (ordering the production of names, addresses, phone numbers, and email addresses); *Pippins v. KPMG LLP*, No. 11 Civ. 0377(CM)(JLC), 2012 WL 19379, at * at *41(S.D.N.Y. Jan. 3, 2012) ("[G]iven the reality of communications today, . . . email notice in addition to notice by first class mail is entirely appropriate."); *Gambino v. Harvard Prot. Servs. LLC*, No. 10 Civ. 0983(PAC), 2011 WL 102691, at *2 (S.D.N.Y. Jan. 11, 2011) (ordering the production, in a computer-readable format, of names, mailing addresses, telephone numbers, and email addresses of potential opt-in plaintiffs).

Therefore, Defendants must produce, within thirty (30) days of the date of this Decision and Order, in computer-readable format, the names, last known mailing addresses, last known telephone numbers, last known email addresses, dates of work, and work locations for all Operators at all locations who were classified as exempt at any time between November 12, 2012, to the date of this Decision and Order.  In the event notices are returned as undeliverable, Defendants must provide the respective individual's social security number for any individual whose notice is returned undeliverable within ten (10) days of Plaintiffs' request for that information which contains proof of the undeliverable notice.

19

2.      Notice

When collective action certification is granted, section 216(b) of the FLSA directs that notice to the potential putative plaintiffs be court-controlled.  Plaintiffs have included a proposed notice to be sent to potential opt-in plaintiffs which is consistent with the sample notice published by the Federal Judicial Center.  (Dkt. Nos. 54-11; 55 at 24.)  Defendants, as noted above, do not lodge any specific objections to the notice contents.  While the Court does not find any difficulties associated with Plaintiffs' proposed notice, except that it should contain the names and addresses of defense counsel, the Court will give the parties an opportunity to negotiate the content of a notice and the follow up postcard which would be acceptable to the Court and consistent with the mandates of section 216(b).  If the parties are unable to agree, then the Court will draft its own notice with input from the parties' respective proposals.  Thus, pursuant to Sabre's request, the parties are directed to confer in an effort to reach an agreement on the content of the notice, and if they are unable to agree within ten (10) days of the date of this Decision and Order, each party shall submit a proposed notice for consideration, and the Court will then draft an Order outlining the notice to be sent in the case.  In terms of the manner of communication, the agreed, or approved notice as the case may be, shall be sent to all potential opt-in plaintiffs by first class mail and email initially.  A sixty (60) day opt-in deadline is appropriate.  A reminder postcard may also be sent part way through the notice period as requested by Plaintiffs, so long as it does not change the end of the notice period.

3.      Equitable Toll

For the reasons stated by Plaintiffs in their brief, the Court agrees that equitable tolling of the statute of limitations is appropriate in this case.  (*See* Dkt. No. 55 at 24.)  Thus, the statute of

limitations for all putative Plaintiffs is tolled from November 10, 2015, the date on which the present motion was filed.  *See, e.g.*, *McGlone v. Contract Callers, Inc.*, 867 F. Supp. 2d 438, 445 (S.D.N.Y. 2012) ("the delay caused by the time required for a court to rule on a motion, such as one for certification of a collective action in a FLSA case, may be deemed an extraordinary circumstance justifying application of the equitable tolling doctrine") (internal quotation marks omitted) (quoting *Yahraes v. Restaurant Assocs. Events, Corp.*, No. 10-CV-935 (SLT), 2011 WL 844963, at *2 (E.D.N.Y. Mar. 8, 2011) (collecting cases)).

## IV.    SUMMARY and CONCLUSION

For the foregoing reasons, the Court approves preliminary certification of this matter as a collective action with the scope extending to all levels of Operators in all states where Sabre employs them.  The Court will also permit discovery of the identities of potential opt-in Plaintiffs, with Sabre to provide a list, in computer-readable format, of the names, last known mailing addresses, last known telephone numbers, last known email addresses, dates of work, and work locations for all Operators.  The parties are directed to negotiate concerning the content of the notice to potential opt-in plaintiffs that would be acceptable to the Court and consistent with the mandates of section 216(b).  The Court is confident that the parties can reach such an agreement within the limited time set forth herein.

Accordingly, based upon all of the foregoing, it is

**ORDERED**, that Plaintiffs' Motion for Conditional Certification and Court-Authorized Notice Pursuant to 29.U.S.C.§216(b) (Dkt. No. 53) is **GRANTED** as set forth above; and it is further

**ORDERED**, that the class of potential opt-in plaintiffs entitled to notice is defined as all

levels of Operators in all states where Sabre employs or employed them between November 10, 2012, and the date of this Decision and Order; and it is further

**ORDERED**, that Sabre shall provide Plaintiffs with a list, in computer-readable format, of the names, last known mailing addresses, last known telephone numbers, last known email addresses, dates of work, and work locations for all Operators in all states where Sabre employs or employed them between November 10, 2012, and the date of this Decision and Order within thirty (30) days of the filing date of this Decision and Order; and it is further

**ORDERED**, that the time period within which potential Plaintiffs may opt-in is sixty (60) days and the opt-in period will commence to run on the date that Sabre provides the names, mailing addresses, and email addresses of potential class members to Plaintiffs; and it is further

**ORDERED,** that the parties shall have ten (10) days from the filing date of this Decision and Order to present to this Court a jointly proposed notice to the putative class for the Court to approve or each party shall submit their requested proposed notice for consideration if they are unable to agree.  Failure to present such joint notice timely will lead this Court to draft the court-approved notice without further assistance from the parties; and it is further

**ORDERED**, that the statute of limitations for the putative class is tolled during the pendency of this motion from November 10, 2015, the date on which Plaintiffs filed this motion for conditional certification.

**SO ORDERED**.

Dated: September 30, 2016
      Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge

22